Ruffin, C. J.
 

 When this case was here before,
 
 2
 
 Ired. 449, the court declined deciding the point now made in it,, because it did not arise on the state of facts. Besides, we consider every question affecting creditors, and on which there is even a slight probability of protecting them against the contrivances ot insolvent debtors by assignments for the benefit of a favored few, to be a question well worthy of consideration, and, for that purpose, of being kept open until it comes up so directly as to make its decision a duty.— That duty has now arrived ; and after having bestowed on it an earnest attention, we are of opinion, that the court cannot pronounce the deed fraudulent in law, and void upon its face; and, therefore, that the judgment must be affirmed.
 

 The deed was made in August, 18-41, with a provision for a sale in January, 1842, at the latest, and directing the proceeds to be applied to the satisfaction of a number of specified debts, for which Mr. Spruill had given sureties, and which amounted to more than twice the value of all his property. It has then this clause: “It is however stipulated, that, as the said Samuel B. Spruill is anxious to save harmless all his sureties, if there be any unprovided for in this indenture, he is at liberty to direct them to be paid in like manner as his other sureties are.” And it now appears, that there was a debt of that character for about $80, which was not mentioned in the deed. It is insisted on the part of the defendant, that this gives to the
 
 debtor
 
 an undue control over the trust fund, amounting substantially to a power of revocation and appointment, and, therefore, the deed is fraudulent and void. (
 

 We fully agree, that if this .deed«contained such a power as
 
 *207
 
 that supposed, it would be clearly fraudulent. A provision for the debtor himself or his family before his debts be paid, and a requisition on the creditors that they should consent to such provision or should release him ; or any other clause by which it is apparent that the debtor executed the deed for his own advantage, would constitute fraud. Those purposes, thus
 
 expressed
 
 in the deed, are so directly dishonest and against law, that no evidence
 
 dehors
 
 can explain them away. Therefore the Court may say the fraud is patent in the deed, and makes it void in law.
 

 A general power of revocation and appointment will have the same effect; for that is virtual ownership of the property, as the law supposes that every such power will be executed for the benefit of the person who has it. And as to the intent, it is the same, whether the power be in form a general and absolute power of revocation, or a power to encumber at the pleasure of the grantor as was decided in
 
 Tarback
 
 v
 
 Marbury,
 
 2 Vern. 510. There one made a deed to trustees and theirheirsin trust to sell and pay all his debts, with a power, nevertheless, to himself to mortgage such part of the estate as he should think fit. Then judgments were obtained against him ; and the question in the cause was, whether they were to come in, under the deed, and be paid in an average with other creditors or be preferred as judgment creditors. It was held, that the deed was fraudulent as to the creditors by judgment, because the power to mortgage and charge what sums he saw fit was a power
 
 to
 
 charge to the full value of the estate so as to amount in effect to a power of revocation. That decision in reference to creditors, is in the spirit of the clause of the St. 27 Eliz. c. 4, which makes void against purchasers a previous conveyance with power in the grantor to revoke, alter, or determine it, although he had not revoked it before the second conveyance. Of this statute Lord Coke says in
 
 Twine's case,
 
 3 Rep. 83, a., that
 
 it
 
 made voluntary deeds made with power of revocation, as to purchasers, in equal degree with conveyances made by fraud and covin to defraud purchasers. And in 82, b. he lays it down, that if A. reserves to himself
 
 *208
 
 a power of revocation, with the assent of B., and afterwards A. bargain and sell the land to another, this bargain and sale is good within the remedy of the act; for otherwise the good provision of the act by a small addition, an evil invention, would be defeated. This last observation is, probably, to be understood with some qualification; for where the power of revocation is not absolute but clogged with a condition that is not illusory, the deed would not seem to be more within the reason than the words of the statute. Thus in
 
 Doe on Dem. Willis v Martin,
 
 4 T. R. 39, it seems to be yielded on all hands, that a settlement, with power to the settler to revoke, and the trustees to sell the estate, so as the purchase should be paid to the trustee and invested in other-lands to the samo uses,- would be good : going clearly upon the ground, that there could be no benefit to the settler under the power, since he was not to get the money, but the trustee was interposed to take the money for the benefit of others, and therefore was not a mere color. But if the condition be but colourable so that that the power is, in fact, tantamount to a power of revocation, it will however, veiled by artifice, make the deed void as to a purchaser. Thus in
 
 Lavender
 
 v
 
 Blackstone, 2
 
 Lev. 146, A. was indebted £4000, for which T. L., his father-in-law, was his surety, and at the instance of T. L. he levied a fine to two persons in fee, in trust at the request of T. L. to sell any of the land and pay those debts or any others for which T. L. should be bound for A/; then, to pay all such debts of A., as were then due and should be certified by A., and his creditors by a certain day ; and then upon ulterior trusts, not necessary to be noticed at present: with a proviso (amongst others) that with consent of the father-in-law, T. L. and one R. L. the said A. might make leases for any part of the lands for any number of years, with or without rent. A. and the trustees sold and conveyed land to the value of £12,000, and therewith debts were paid; then A. alone sold other lands of £400 per. an. and conveyed them, and the purchaser held them many years without disturbance ; and then mortgaged the residue of the land ; and upon a trial at
 
 *209
 
 bar of an ejectment between the mortgagee and one claim-i'ng under the fine, the jury found for the mortgagee under the direction of the Court, for these reasons : The continuing in possession and the ssle of £400 pr. an. by himself solely, while the trustees joined in the sale of the other part, was a badge of fraud : secondly, the proviso to make' loans for any term without rent with consent of the trustees, put it in his power to defeat the whole settlement, and those were trustees ot his own voluntary nomination. This case presents several points for' observation, material to that now before the' Court'. One is, that the first reason must have been one left to the jury, since the circumstances on which it rests are stated to be badges — and but badges — of fraud. Another is, that the next was, probably, left to the jury also, as the Court could not know that the trustees (whose consent was required) were the mere agents of the settler, put into the deed to help' on his views and not to check him when about acting to the prejudice of the creditors. But if that was not so, and the Court directed the jury to find the deed fraudulent, as coming within the St. 27 Eliz. it must have been on the ground, that the power to lease without rent, under any restriction as to consent of others, must have been inserted with a view'solely to the personal advantage of the settler in getting heavy fines, which would go into his own pocket, instead of rents, which would go to those to whom the estate would go under the settlement: still having respect to the benefit provided in the conveyance for'the grantor. But the most apposite fact to our present purpose is, that one of the uses of the fine is precisely of the same character with the clause in this deed, on which it is impeached, and so far from having been deemed a fraud
 
 per se,
 
 which avoided' the conveyance in law, it was not even noticed to the jury as one of the badges or evidences of fraud to be. considered by them. The provision alluded to is that before mentioned secondly ; that is to say, “in trust to pay such debts of A. as were then due and should be certified by A. and his creditors within a time limited.” It is not, therefore, the mere iact, that the appropriation of the •trust fund may be changed, or that the debtor the
 
 *210
 
 appropriation by letting in other creditors existing at the time, that converts the power to do those acts into a faudu-len-t power of revocation, either literally or substantially. The-true principle is, that if it appear expressly to be for the benefit of the grantor — as every general power of revocation mu'st be — or to be a contrivance designed for that end, although covered by some form- with a view to conceal that end ; then, it is fraudulent under the Statute ; but otherwise there must’ be a purpose actually to deceive found by the jury. In
 
 Griffin
 
 vs Stanhope, Cro. Jac. 455, there was a lease to one, in trust for the lessor’s wife,' (in pursuance of a promise before- marriage,) with a provision- endorsed, that the intent was, that when there should be a jointure of £1000 pr. an. settled'upon her, the lease should be void; and it was contended' to be fraudulent, because by the proviso it was to determine at tbe party’s will. But the Court held otherwise, and took this difference:" .That-when loans are made with a proviso, that if the lessor pay ten shillings, that the loan should be void, it is apparent that the sum is not the value of the land, but only limited as a power of revocation, and therefore void. But if the proviso be, that if the lessor pay £1000, then the lease shall be void, this is not fraudulent, but the lease shall be good against the purchaser, if the money be not-paid thereon; for, in truth, this last is but a common mortgage,, and the sum is not colourable barely. But in
 
 Jenkins
 
 v
 
 Keymis
 
 1 Leo. 180, it was held upon a special verdict, that a settlement with a power to the settler to charge the sum of £ 1000, on a large estate, was not void, because “it is nota power within the words of the statute (it being a particular sum) to revoke, determine or alter the estate;
 
 and no fraud being found, they (the Court) could not adjudge the conveyance fraudulent.
 

 Applying the principles of these cases
 
 to the
 
 present, it seems clear that the Court cannot pronounce the deed fraudulent. We assume, that upon its true construction the clause does'not provide for any but the scheduled sureties, except at the election and upon the appointment of Spruill. But we think it does not give him fraudulently an undue
 
 *211
 
 control over the fund. There is no uncertainty as to the persons to take benefit for an unreasonable time; at least, not obviously so. From the nature of the power he must have executed it, at or before the time oí sale and distribution of the proceeds among the scheduled debts; so that the creditors could not be long tied up. In terms it is not a provision or a power to make a provision for himself or any volunteer under him ; but for a directly opposite end. In any event all the property is gone from him forever. But in parting from it, he reserves the power oí doing ecpial justice to all his sureties, as well those he could not then ennumerate, as those he had specified. If that was really the purpose, it was one of the soundest morality — placing all having the same meritorious claims on him on the same footing; and if the creditors and sureties, who procured him to execute the deed, were satisfied with it, no other person can object, as the value of the estates is far less than the scheduled debts. It is not a power by which, apparently, he can take benefit indirectly; for he cannot gain credit and contract new debts on the faith of the power, since it is expressly restricted to those existing at the execution of the deed. It only gives the debtor the power of doing,’ thereafter, what he ought to have done then. It is said, that such a power may be, nevertheless, used to the-debtor’sadvantage, as the means of bargaining with the different sets of creditors to exclude or admit those not mentioned in the deed. We suppose an appointment from any such consideration would be an illusory execution of the power, and therefore disregarded. The act would be a fraud on the power; and not the power a fraud on creditors. But admit, that such a dishonest exercise of the power could be sustained; yet it would only be true, that such a power is equivocal and may be used to bad as well as to good ends. Therefore it follows, that it is fit a jury should say, whether the purpose of inserting it in the deed was the good one, expressed in it, or the bad one, imputed to it and to which, perhaps, it may be abused. The susceptibility of such abuse is not a ground on which the Court 'Can say conclusively it is fraudulent in aw'
 
 *212
 
 but only a canse of suspicion and argument of fraud
 
 to
 
 be weighed by a jury. If an insolvent father make a gift to his son, the law, as Lord Coke says, intends a trust between |]jem, that is, that the donee would, in consideration of such a gift freely made, and also in consideration of nature, relieve his father and not see him want, who had made such a gift •to him. Therefore, the law prouounces that c.onveyance fraudulent. But if an insolvent father owe a debt justly to his son and make an assignment to secure or pay the same ; although it is evident that there is great danger of the abuse of the power of debtors to'give preferences among creditors, and it is not only possible bn.t highlyprobable, .that the fath* er thus preferred his son because he knew that “in .consideration of nature” the son would be disposed to relieve him, and therefore he thus secured to him the means of doing it by paying him and leaving all others unpaid; yet the Court cannot pronounce such a transaction a fraud, but must submit it to the jury to say, from that and other attending circumstances, such as the father’s retaining possession, or enjoying other bounties from the son, whether the intent was
 
 Iona fide
 
 to pay the son, or under pretence of that to provide for the father himself. In such a case, and in the one before the Court, to use the langnage in
 
 Jenkins
 
 v
 
 Keymiss
 
 no fraud being found, the Court cannot adjudge the conveyance fraudulent. There is nothing hero
 
 to excite
 
 a suspicion oí actual fraud. The argument against the deed arises from the abuse, that
 
 might
 
 be made by the debtor in holding himself up to be bribed by the creditors. But what could he make by admitting or excluding a petty sum oí f SO, when the scheduled debts amount to thirty or forty thousand dollars'? The particular circumstmces of this case shew how unreasonable the rule would be, which sternly prouounced the deed void, when no actual fraud was intended, but .quitG the contrary. The argument against the deed consisted of general reasoning, without an adjudication to sustain it* We think, however, the principle is the other way; and that where there is an apparent good purpose, it is not to be presumed bad without some proof. Besides which, the case of '
 
 *213
 

 Lavender
 
 v
 
 Blackstone
 
 is directly in point, as there one the trusts was similar to that in this deed, and it was not ven contended that it was a badge of fraud, though there were several others on which the fine was found to be fraudulent.
 

 Per Curiam, Judgment affirmed.